IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GEDE LOVE STEWART,           )
                             )
            Plaintiff,       )
                             )
      vs.                    )    Civil Action No. 13-73
                             )
MICHAEL J. ASTRUE,           )
COMMISSIONER OF SOCIAL SECURITY, )
                             )
            Defendant.       )


O R D E R

AND NOW, this 2nd day of January, 2014, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. §1381, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. §405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

1

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] After careful review of the record, the Court finds that Plaintiff's contentions carry no merit whatsoever. As set forth in the Administrative Law Judge ("ALJ")'s thorough and detailed decision, the record falls woefully short of demonstrating that Plaintiff is an individual whose impairments completely preclude her from working. First, there is a dearth of actual medical evidence in the record, and of the records that do exist, none begin to support a finding of disability. To the contrary, the picture that is painted by this record is that of a new mother who quit working in November of 2009, not because of any disabling conditions, but because she began a new chapter in her life -- a chapter that would overwhelm almost any individual in that position. Indeed, Plaintiff stopped working around the same time that she gave birth to her youngest child and moved to Pittsburgh from Maryland to be with her boyfriend and father of her child. See (R. 29, 186-87). As the ALJ discussed, Plaintiff provided no details as to why her mental health issues suddenly forced her to stop working, and, even though Plaintiff alleged an onset date of September 2009 in her application for benefits, she admitted to working until November of that year. See (R. 126). The ALJ further noted that the record contained no evidence of mental health treatment prior to January of 2010, two months before Plaintiff filed for benefits, even though she testified that she had been struggling with a bipolar disorder diagnosis since the age of thirteen. See (R. 29, 39). The ALJ also noted that when Plaintiff's treatment did begin, it consisted of nothing more than conservative medication and continued therapy sessions, treatment which is inconsistent with complaints of a severely disabling mental impairment. See (R. 31, 191).

Second, the Court finds that the ALJ did an exceptional job of setting forth her discussion of the medical evidence and her rationale for why Plaintiff is able to perform work consistent with her Residual Functional Capacity ("RFC") determination. The Court notes that, in rejecting the finding that Plaintiff had a marked limitation in dealing with the public, the ALJ stated that there were no corroborating reports of aggressive behavior that would give credence to that alleged limitation and the Court finds that substantial evidence supports that conclusion. See (R. 26). Furthermore, as the Defendant points out, the actual recommendation from the non-examining state agency psychologist was set forth under Section III of the report which is the section that is used to record the actual mental RFC determination and "explain[] the conclusions indicated in Section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." See Program Operations Manual System (POMS) DI 24510.060 Mental Residual Functional Capacity Assessment, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060 (last visited September 24, 2013). Section III of the report stated, among other things, that Plaintiff "can perform simple, routine repetitive work in a stable environment" and it made no reference to Plaintiff's purported inability to interact with the public. See (R. 224). Indeed, the marked limitation finding was set forth in **Section I "which is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of the documentation and **does not constitute the RFC**

2

Therefore, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment (document No. 12) is DENIED and defendant's Motion for Summary Judgment (document No. 14) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf:   Counsel of record

---

**assessment."** See POMS (emphasis in original). In any event, the Court notes that the ALJ is not bound to accept every limitation that is found by a medical professional, but rather only the ones that she finds are credibly established by the record. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did not err by incorporating into her RFC finding only those limitations which she found to be credibly established by the objective medical evidence and the Court finds that the ALJ's RFC determination as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial record evidence.

Finally, the Court finds that the ALJ evaluated the medical opinion evidence properly and in accordance with the applicable rules and regulations and that substantial record evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source statements from the mental health providers were not given controlling weight, and, in that regard, the Court notes that Allison Walker was a Licensed Professional Counselor -- *not a nurse* -- and as such, her opinion was never entitled to controlling weight. See (Doc. No. 13); see also 20 CFR 416.913, 416.927. In any event, the ALJ discussed at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker were inconsistent with and contradicted by the other medical evidence of record, including their own notes and prior findings. See (R. 25-27, 31-33). The Court finds that the ALJ discharged her duty because she (i) demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory evidence in the record which conflicted with her findings, and (iii) explained why that contrary evidence was rejected or not given controlling weight. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Indeed, the overarching theme of the ALJ's decision was the complete lack of objective medical evidence which corroborated or even tended to support Plaintiff's complaints of severely disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her own self-reports, which -- for the reasons discussed by the ALJ -- were not particularly credible. See (R.27-33). To that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ, and the evidence that Plaintiff was displaying drug-seeking behavior when she visited the emergency room 32 times within a nine-month period. See (R. 26-32). Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability.